## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**MARY ELLEN DAYAN-VARNUM,
Administrator of the Estate of
John Horton Dayan, Deceased,**

      **Plaintiff,**

v.

      **Case No. 23-CV-00052-SEH**

**KATHRYN DAYAN, an Individual,
DAVA DAYAN, an Individual,
MERRILL LYNCH PIERCE
FENNER & SMITH, INC., a
Foreign Corporation, and
STIFEL, NICOLAUS & CO., INC., a
Foreign Corporation.**

      **Defendants.**

## OPINION AND ORDER

Before the Court is the Motion to Quash and to Dismiss or, in the
Alternative, to Transfer, or, in the Alternative, to Stay filed by Defendants
Kathryn and Dava Dayan[1] . [ECF No. 38]. Defendants specifically request
the Court to quash service pursuant to Fed. R. Civ. P. 12(b)(5) and to dismiss
the claims against them for lack of personal jurisdiction pursuant to Fed. R.
Civ. P. 12(b)(2). [ECF No. 38 at 6]. "In the alternative to dismissal for lack of

---

[1] Throughout this order, the Court may refer to certain individuals by their first
name only. The Court does not intend any disrespect. Rather, this is done in the
interest of clarity because several parties and other individuals share a last name.

personal jurisdiction, Kathryn and Dava move to transfer this action to the United States District Court for the Northern District of California pursuant 28 U.S.C. § 1404(a)." [*Id*.]. "In the alternative to dismissal for lack of personal jurisdiction or transfer, Kathryn and Dava request that this action be stayed pending resolution of" certain California probate proceedings. [*Id*.]. Finally, "[i]n the alternative to dismissal for lack of personal jurisdiction or transfer, Kathryn and Dava request that the Court dismiss Mary Ellen's Third and Ninth Causes of Action against them pursuant to" Rule 12(b)(6). [*Id*.]. For the reasons explained below, the Court GRANTS in part and DENIES IN PART Defendants' motion.

## I.   Background[2]

This case stems from the death of John Horton Dayan. [ECF No. 2-2 at 25]. The parties' dispute largely focuses on what happened to John's property after he died, and the conduct of his ex-wife, Kathryn Dayan, and another individual, Dava Dayan, who is the daughter of another of John's ex-wives. [*Id*. at 2]. This case is brought by Mary-Ellen Dayan-Varnum, John's sister, as the administrator of John's estate. [ECF No. 2-2 at 1].

---

[2] The Court sets forth the facts in this section as they are alleged by Plaintiff for background purposes only. The Court will evaluate specific facts only as necessary and as specifically identified below in subsequent sections.

John moved to Tulsa, Oklahoma, in the fall of 2019 to be cared for by his brother, Michael Dayan. [*Id*. at 3–4]. John died in January 2021, and he resided in Tulsa at that time. [*Id*.]. John had several assets at the time of his death, but two are the primary subjects of this dispute: a Ford F-150 truck and approximately $750,000 stored in various accounts. [*Id*. at 4].

Plaintiff alleges that Kathryn "filled out, signed and dated a State of Oklahoma Death Certificate Information Form," and listed herself as John's spouse even though they divorced before John died. [*Id*.]. This, according to Plaintiff, allowed Kathryn to put John's $750,000 under her name and control. [*Id*. at 4–10]. As for Dava's involvement in transferring the money to Kathryn's name and control, Plaintiff alleges: (1) "Dava actively participated with Kathryn in the defrauding of the estate and keeping the funds for their own benefit and to the exclusion of the Estate;" (2) "Dava knew that the activity participated in by Kathryn was fraudulent and has continued in her efforts to conceal such fraud through her litigation efforts and tactics;" (3) "Dava knew she was to monetarily benefit from the fraudulent activities that both she and Kathryn had undertaken;" and (4) that Dava "has stated that she does not intend to challenge nor undertake to reacquire the assets in Kathryn's possession for the benefit of Plaintiff." [*Id*. at 9].

Plaintiff further alleges that after Kathryn had herself listed as John's spouse on the death certificate, the title of the F-150 truck was put in

Kathryn's name. [*Id*. at 5–6]. As for Dava's involvement regarding the truck, Plaintiff alleges that "Dava knew of Kathryn's fraudulent actions and actively assisted and participated in the same. Further, Dava was to monetarily benefit from these fraudulent actions as alluded to in various pleadings by both Kathryn and Dava." [*Id*. at 6].

Plaintiff also contends that Kathryn "emotionally blackmailed" [ECF No. 46 at 17] Michael through text message to do her bidding as the "muscle on the ground" in Oklahoma. [ECF No. 46-4 at 34]. Specifically, Plaintiff claims that Kathryn had Michael:

> Ship[ John's] computer and cell phone to her in California, reveal[] the name of their first pet so she could "hack" into [John's] Merrill Lynch account, scour[ John's] belongings to locate [John's] truck title and other documents which [Michael] then sent to her, pick[] up issued death certificates for her, and mail[] one to Merrill Lynch and send[] the rest to her, all under the guise of her obtaining the Merrill Lynch funds 'under the table because she and John had the same broker,' and giving him a share of same.

[ECF No. 46 at 17] (citing [ECF No. 46-2 at 23, 44, 56, & 60]; [ECF No. 46-3 at 59]). Plaintiff asserts claims against Kathryn and Dava for breach of contract, fraud, civil conspiracy, embezzlement, unjust enrichment, constructive trust, conversion, and interference with a contractual relationship. [ECF No. 2-2 at 10–16].

## II.   Personal Jurisdiction
### A. Legal Framework

For motions to dismiss filed by a defendant under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Vora v. Dionne*, No. 23-1090, 2024 WL 509030, at *2 (10th Cir. Feb. 9, 2024) (unpublished); *Project Drilling, LLC v. Ledya Oil and Gas Expl. and Prod., SA*, No. 21-CV-0427-CVE-CDL, 2022 WL 428172, at *2 (N.D. Okla. Feb. 11, 2022) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)). A plaintiff must "make a *prima facie* showing of personal jurisdiction to defeat the motion." *Project Drilling, LLC*, 2022 WL 428172, at *2. (emphasis added and quotation marks omitted). A plaintiff can make the *prima facie* showing "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over" a defendant. *Id.*

To establish personal jurisdiction, a plaintiff must satisfy Oklahoma's long-arm statute and constitutional due process. *Breckenridge Consulting, LLC v. Tek For Your Life, LLC*, No. 23-248-JWB, 2024 WL 1481084, at *2 (N.D. Okla. March 26, 2024) (citation and internal quotations omitted). "The Oklahoma long-arm statute allows jurisdiction to the fullest extent permitted by constitutional due process, so courts can proceed straight to the constitutional issue." *Id.* (citing *Dental Dynamics, LLC v. Jolly Dental Grp.*,

*LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020)); *see also* Okla. Stat. tit. 12, § 2004(F)).

"To exercise jurisdiction in harmony with due process, defendants must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (cleaned up). "The minimum contacts may give way to specific or general jurisdiction." *Just Between Friends Franchise Sys., Inc. v. Samone Gibson Enterprises, LLC*, No. 23-CV-098-JFH-JFJ, 2023 WL 2496584, at *3 (N.D. Okla. March 14, 2023) (citing *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)).

If a plaintiff makes a *prima facie* showing of personal jurisdiction, the burden shifts to the defendant. To overcome the *prima facie* showing, defendants "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Project Drilling, LLC*, 2022 WL 428172, at *2. The Court takes all allegations in a plaintiff's complaint as true "to the extent they are uncontroverted by a defendant's affidavit" and "all factual disputes must be resolved in the plaintiff's favor" if there are conflicting affidavits. *Id*. However, the Court need only accept "plausible, non-conclusory, and non-speculative" facts alleged by the plaintiff. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir.

2011) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)).

### 1. General Personal Jurisdiction

Unlike specific personal jurisdiction, general personal jurisdiction does not require that the litigation "arise from the defendant's activities in the forum." *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012). Rather, general personal jurisdiction "requires that a defendant have contacts with the forum so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* (internal quotation mark and citation omitted).

### 2. Specific Personal Jurisdiction

Personal jurisdiction is a question of the quality of a defendant's contacts with the forum state just as much as it is the quantity, and the Court "may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state." *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017). Under this principle, courts engage in "a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (citations omitted).

### a. Minimum Contacts

Minimum contacts analysis requires that a plaintiff meet two requirements: "(i) that the defendant must have 'purposefully directed its activities at residents of the forum state,' and (ii) that 'the plaintiff's injuries must arise out of [the] defendant's forum-related activities.'" *Id.* (citations omitted).

There are multiple frameworks a court can use to analyze whether a defendant purposefully directed its activities at residents of the forum state. *Id.* at 905. Plaintiff asserts that personal jurisdiction exists in this case under the "harmful effects" framework (also known as the *Calder* effects test) of purposeful direction analysis. [ECF No. 46 at 15]. To establish personal jurisdiction under this framework, a plaintiff must show "(a) an intentional action ... , that was (b) expressly aimed at the forum state ..., with (c) knowledge that the brunt of the injury would be felt in the forum state." *Old Republic Ins. Co*, 877 F.3d at 907 (quoting *Dudnikov* , 514 F.3d at 1072).

With respect to the "arising out of" requirement, "there must be an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'" *Id.* at 908 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 261 (2017)). Without any such connection, there is no specific personal

jurisdiction over the defendant "regardless of the extent of a defendant's unconnected activities in the State." *Id.*

### b. *Fair Play and Substantial Justice (Reasonableness)*

Even assuming a plaintiff shows that a defendant has minimum contacts with the forum state, the question of "whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice" remains. *Id.* (citations omitted). In the Tenth Circuit, that question is answered by considering five factors: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* at 909 (citation omitted).

## B. Discussion

Plaintiff asserts that there is specific personal jurisdiction over each Defendant. [ECF No. 46 at 15–20]. Therefore, the Court will address only specific personal jurisdiction, and not general personal jurisdiction.

### 1. Kathryn

Plaintiff contends that two categories of Kathryn's conduct justify exercising personal jurisdiction: "[(1)] Kathryn's misrepresentations regarding her surviving spouse status to obtain an Oklahoma State issued

death certificate[; and (2)] her emotional blackmailing of her brother-in-law." [*Id*. at 15]. The Court finds that Plaintiff's allegations regarding Kathryn's conduct support personal jurisdiction.

### a. Minimum Contacts

First, Plaintiff has made a *prima facie* showing that Kathryn purposefully directed her conduct at Oklahoma by convincing Michael, who was in Oklahoma, to list her as John's surviving spouse on an Oklahoma death certificate. Plaintiff has also made a *prima facie* showing that Kathryn purposefully directed communications to Michael to take certain actions in Oklahoma such as surveying John's property and assisting with transferring the title of the Ford F-150 located in Oklahoma. Plaintiff also alleges that Kathryn did more than simply send communications to Oklahoma. Specifically, Plaintiff has made a *prima facie* showing that Kathryn communicated with Michael for the purpose of carrying out a substantial part of her plans in Oklahoma. The Court finds that this is intentional conduct expressly aimed at Oklahoma with the knowledge that the brunt of the injury would be felt in Oklahoma. *See generally Old Republic Ins. Co*, 877 F.3d at 907). As shown by Plaintiff, Kathryn was aware that without her conduct, John's family members could have gone through the formal probate process in Oklahoma. *See* [ECF No. 46-3 at 60]. These facts as alleged by Plaintiff sufficiently establish minimum contacts with Oklahoma.

10

Second, considering that a substantial portion of John's property was in Oklahoma, Kathryn's knowledge that her conduct would potentially avoid the Oklahoma probate process, and her additional intentional conduct directed at Oklahoma, the Court further finds that Plaintiff has made a *prima facie* showing that her injuries arise out of Kathryn's activities directed at Oklahoma. In essence, Plaintiff alleges that Kathryn tried to wind up John's affairs in Oklahoma from California via text message. That conduct fundamentally underpins Plaintiff's claims, which the Court finds to be sufficient minimum contacts.

### b. Fair Play and Substantial Justice (Reasonableness)

Having considered all five of the relevant factors, the Court finds that "traditional notions of fair play and substantial justice," *Old Republic Ins. Co*, 877 F.3d at 908, would not be offended by exercising personal jurisdiction over Kathryn in this case. Certainly, Kathryn would be burdened to some extent by being forced to litigate in a state where she does not reside. However, the other four factors either weigh in Plaintiff's favor or do not weigh in either party's favor. The Court finds that the second factor, the forum state's interest in resolving the dispute, weighs heavily in Plaintiff's favor. Plaintiff alleges that Kathryn intentionally orchestrated conduct in Oklahoma and fraudulently listed herself as the surviving spouse on an official Oklahoma death certificate. It is reasonable to expect that Oklahoma

11

has a substantial interest in having the dispute arising from that conduct litigated within its boundaries.

For the reasons stated above, the Court DENIES Defendants' motion to dismiss Kathryn for lack of personal jurisdiction.

### 2. Dava

Plaintiff's arguments in favor of personal jurisdiction as to Dava consist of one paragraph in her response to Defendants' motion. [ECF No. 46 at 19–20]. Plaintiff first argues that "Jurisdiction over [Dava] is justified by the same principles as applied to Kathryn related to intentional acts aimed at the Oklahoma forum and one of its residents (Michael Dayan)." [*Id*. at 19]. In other words, Plaintiff appears to contend that the Court should analyze personal jurisdiction as to Dava under the "harmful effects" framework identified above.

Plaintiff provides only conclusory statements to support personal jurisdiction over Dava. Plaintiff first contends that "Dava was in concert with these actions and also had significant contacts with [the decedent's brother who lived in Oklahoma] regarding the same." [*Id*. at 20]. Next, Plaintiff relies on her assertion that: "Dava's participation is evident from her decisional authority to keep the Ford F-150, her conversations with Michael, her receipt of unknown packages from FedEx from Michael, and that she was going to

receive cash in lieu of possession of the truck." [*Id*. at 9] (citing [ECF No. 46-2 at 17]; [ECF No. 46-3 at 17, 22, 26]).

The facts that Plaintiff says support personal jurisdiction over Dava are, at most, generalized communications about the status of John's affairs, some of which do not even appear to be from Dava. That is not an allegation about Dava's intentional conduct directed at Oklahoma. Based on the record currently before the Court, Dava did not ask anyone in Oklahoma to affirmatively do anything. Because Plaintiff's allegations about Dava's participation are conclusory and speculative, the Court cannot exercise personal jurisdiction as to her.

Plaintiff also contends that Dava's participation in a conspiracy with Kathryn supports personal jurisdiction. [*Id*. at 19–20]. However, "[i]n order for personal jurisdiction based on a conspiracy theory to exist, the plaintiff must offer more than 'bare allegations' that a conspiracy existed, and must allege facts that would support a *prima facie* showing of a conspiracy." *Ortiz v. Perry*, No. 17-CV-489-JHP-JFJ, 2018 WL 10127035, at *10 (N.D. Okla. May 11, 2018) (quoting *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069), *report and recommendation affirmed and adopted*, 2018 WL 10127619 (N.D. Okla. May 29, 2018). In response to Defendant's motion, Plaintiff makes a conclusory statement that "Kathryn could not have pulled off the conversion without Dava's active cooperation" and that "[b]oth Dava and Kathryn

13

schemed together to perform tortious acts that were directed toward and succeeded in inflicting harm on Plaintiff in Oklahoma. Indeed, it is evident Dava was in concert with these actions and also had significant contacts with Michael regarding the same." [ECF No. 46 at 19–20]. Plaintiff's allegations in the petition are similarly conclusory. *See* [ECF No. 2-2 at 15]. Without specific allegations of Dava's participation in the conspiracy with Kathryn, the Court cannot exercise personal jurisdiction over Dava on this basis either.

For these reasons, the Court cannot exercise personal jurisdiction over Dava. The Court therefore DISMISSES the claims against Defendant Dava Dayan WITHOUT PREJUDICE.

## III.   Service of Process

### A. Legal Framework

A court cannot exercise personal jurisdiction over a defendant that has not been properly served with the complaint and summons. *Harvey v. Filart*, No. 19-CV-00260-TCK-CDL, 2021 WL 4616088, at *2 (N.D. Okla. Oct. 6, 2021). Because service of process implicates personal jurisdiction, it is a "prerequisite to proceeding further in a case." *Id.* (citation omitted). Like with a motion under Fed. R. Civ. P. 12(b)(2), a "plaintiff bears the burden of proving that service was properly made." *Dungan v. Lehnus*, No. 20-CV-0393-CVE-JFJ, 2021 WL 1234522, at *2 (N.D. Okla. April 1, 2021) (citation omitted). Plaintiff may establish proper service of process by submitting

14

"affidavits and other documentary evidence for the court's consideration, and plaintiff is entitled to the benefit of any factual doubt." *Harvey*, 2021 WL 4616088, at *2.

To be sure, a court may dismiss an action for failure to properly serve. *Id.* But a court should usually quash service (*i.e.* invalidate a plaintiff's purportedly valid service and provide another opportunity to serve) when insufficient service on a defendant can be cured, rather than dismiss the action. *Edwards v. F&M Property Mgmt.*, No. 22-CV-495-JFH-SH, 2023 WL 11760951, at *3 (N.D. Okla. Sept. 26, 2023) (citing *Pell v. Azar Nut Co.*, 711 F.2d 949, 950 (10th Cir. 1983)).

Under Fed. R. Civ. P. 4(e)(1), a plaintiff may serve process by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Alternatively, a plaintiff may properly serve a defendant by doing any of the following:

> (A) delivering a copy of the summons and of the complaint to the individual personally;

> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2). If a plaintiff cannot serve a defendant because he or she has evaded service, a court can find service was perfected if the defendant intentionally evaded service. *Wootton New Holland, LLC v. Capital Machinery 1 Corp.*, No. CIV-16-1434-F, 2017 WL 9500997, at *1 (W.D. Okla. Sept. 5, 2017). It is a plaintiff's burden to show intentional evasion, and the "burden is not a light one." *Id*. To establish intentional evasion, a plaintiff "must establish *clear and convincing evidence* of evasion on the part of the defendant in order to avoid typical service requirements." *Id*. (emphasis added). Importantly, "proof of evasion of service cannot be inferred only from repeated, though faulty, attempts at service." *Id*.

## B. Discussion[3]

### 1. Service on Defendants' Counsel

Plaintiff asserts that service is proper because her counsel served Defendants' counsel of record by hand delivery. [ECF No. 46 at 11] ("hand delivery of service to Defendants' counsel of record was also the last of repeated, *unsuccessful* attempts to serve Kathryn and Dava.") (emphasis added). Setting aside the fact that the proofs of service filed by Plaintiff's counsel are unsigned [ECF Nos. 33 & 34], it appears that Plaintiff asserts that service is proper under Fed. R. Civ. P. 4(e)(2)(C).

---

[3] Because the Court finds that it cannot exercise personal jurisdiction over Dava Dayan, the issue of service as to her is moot. Therefore, the Court only addresses the issue of service as to Kathryn Dayan.

16

On the issue of serving Defendants' counsel as their agent pursuant to Fed. R. Civ. P. 4(e)(2)(C), Plaintiff blames Defendants' counsel for "difficulty of communication" as well as "delay and obfuscation." [ECF No. 46 at 12] (citing an email exchange between counsel at [ECF No. 38-21]). Plaintiff further asserts that Defendant's counsel "advised [Plaintiff's counsel] he was still 'working on it,'" concerning Plaintiff's counsel's request to accept service on behalf of Defendants, and that Defendants' counsel "never expressly advised he was not authorized to accept service and failed to ever respond subsequent to" Plaintiff's counsel's inquiry. [*Id*.].

Upon reviewing the email exhibit cited by Plaintiff [ECF No. 38-21], these communications do not show any agreement by Defendants' counsel to accept service on behalf of the either Dava or Kathryn. Indeed, Defendants' counsel submitted a declaration that states: "At no time prior to [the day after Plaintiff's counsel purportedly made service by hand-delivery], did I or any other counsel for Kathryn or Dava agree to accept service of the Summons and Petition on behalf of Kathryn or Dava, or indicate that we had authority to do so." [ECF No. 38-22 at 4].

Clients often give attorneys authorization to accept service on their behalf in the interest of pragmatism. But regardless of Plaintiff's counsel's characterization of his communications with Defendants' counsel, the question is whether there is any "factual doubt," *Harvey*, 2021 WL 4616088,

at *2, about whether Defendants gave their counsel authorization to accept service. There is no factual doubt in this case. Rather, the only facts Plaintiff puts forward on this issue are communications with Defendants' counsel in which counsel only indicated he would "check with [his] clients," and that he was "[w]orking on it" when Plaintiff's counsel followed up. [ECF No. 38-21 at 1–2]. The closest the parties got to agreeing to waiving service of process is in an email chain between counsel where the possibility of waiving service of process was discussed, but there was not a meeting of the minds on that front. [ECF No. 46-4 at 23–27]. There is no evidence in the record before the Court that shows that any Defendant did, in fact, give their counsel authorization to accept service on their behalf. Nor does Plaintiff provide the Court with any authority that establishes Defendants' counsel as an agent authorized by law to accept service. Without any evidence or authority of such authorization, service is not proper under Fed. R. Civ. P. 4(e)(2)(C). *See generally Graff v. Kelly*, 814 P.2d 489, 494 (Okla. 1991); *Harvey*, 2021 WL 4616088, at *3 (citing *Graff* for the proposition that service on an unauthorized agent does not substantially comply with Okla. Stat. tit. 12, § 2004).

## 2. Evasion

Plaintiff also asserts there is good cause to extend the time to serve under Fed. R. Civ. P. 4(m) due to Defendants' intentional evasion. Unsurprisingly,

the parties have different perspectives on Plaintiff's attempts to serve Defendants. Plaintiff filed an exhibit containing a receipt for an unsuccessful attempt at a certified mailing as well as two affidavits of due diligence that document several attempts by a process server at serving Kathryn between December 2022 and February 2023. [ECF No. 46-4 at 12–22]. Plaintiff contends that the unsuccessful "attempts [at service] and the communications with Defendants' counsel of record, set forth in detail herein, are evidence that Defendants have been intentionally evading service of process." [ECF No. 46 at 11]. Plaintiff further contends that "[b]ased on the extent of Defendants' knowledge of the pending litigation and the unsuccessful efforts of service, it is reasonable to infer and assume that the Defendants Kathryn and Dava were actively evading service." [*Id*. at 12].

In response, Defendants submitted declarations to explain why they had not intentionally avoided service. [ECF Nos. 49-1, 49-2]. Kathryn contends that she "has not worked at the business address where [Plaintiff] attempted to serve her since the COVID-19 pandemic, [and she] is aware of only a single attempt [at service] made while Kathryn was out of town, which was caught on security camera." [ECF No. 49 at 3].

Plaintiff's arguments about repeated, but unsuccessful, attempts at service do not provide the Court with a sufficient basis to find that Kathryn has intentionally evaded service by "clear and convincing evidence." *Wootton*

19

*New Holland, LLC v. Capital Machinery 1 Corp.*, No. CIV-16-1434-F, 2017 WL 9500997, at *1 (W.D. Okla. Sept. 5, 2017). The process server's declarations reflect service attempts made when Kathryn was simply not home, not that she took any steps to avoid service outright. [ECF No. 46-4 at 12–22]. And according to Kathryn's declaration, she no longer worked at the business address Plaintiff's process server attempted to serve her at—a fact that Plaintiff does not dispute. [ECF No. 49-1 at 1]. Further, nothing in the federal rules *require* a party to allow an attorney to accept service on his or her behalf. Therefore, because Plaintiff has not provided clear and convincing evidence that Kathryn intentionally evaded service, the Court finds that Plaintiff has not properly served Kathryn. Accordingly, the Court hereby GRANTS Defendant's motion to quash service pursuant to Fed. R. Civ. P. 12(b)(5).

Although the Court finds that Plaintiff has failed to timely serve the petition and summons, the Court also finds that there is good cause to provide Plaintiff additional time to serve Kathryn. Plaintiff may serve Kathryn Dayan no later than 60 days after the date this order is entered. Because Plaintiff has been granted additional time for service, the Court declines to address Plaintiff's request for service by alternative means. [ECF No. 46 at 13].

## IV. Remaining Issues

As noted above, service of process is a "prerequisite to proceeding further in a case." *Harvey v. Filart*, No. 19-CV-00260-TCK-CDL, 2021 WL 4616088, at \*2 (N.D. Okla. Oct. 6, 2021) (citation omitted). This case was filed pre-removal more than 21 months ago, much longer than the 90 days contemplated by Rule 4. Given the difficulties with prior attempts at service in this case, and because service of process is a prerequisite to proceeding forward, the Court declines to address the other alternative bases for dismissal asserted in Defendants' motion. In the event Plaintiff successfully and timely serves Kathryn, she will have an opportunity to file a motion to dismiss on the grounds the Court did not address in this order.

DATED this 1st day of October, 2024.


_Sara Hill_____

Sara E. Hill
UNITED STATES DISTRICT JUDGE