# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**MARY ELLEN DAYAN-VARNUM,**
**Administrator of the Estate of**
**John Horton Dayan, Deceased,**

**Plaintiff,**

v.

**KATHRYN DAYAN et al.,**

**Defendants.**

**Case No. 23-CV-00052-SEH-MTS**

## OPINION AND ORDER

Before the Court are two motions: Defendant Kathryn Dayan's[1] Motion to Quash and to Dismiss or, in the Alternative, to Transfer or, in the Alternative, to Stay and Brief in Support [ECF No. 82];[2] and Defendant Kathryn Dayan's Motion to Dismiss or, in the Alternative, to Quash Service of Process and Brief in Support [ECF No. 89]. These motions are fully briefed and ripe for decision. The motions are granted in part and denied in part as set forth below.

---

[1] As previously noted, the Court may refer to certain individuals involved in this case by their first name only. The Court does not intend any disrespect. Rather, this is done in the interest of clarity because several parties and other individuals share a last name.

[2] The Court notes that [ECF No. 82] was filed as a multi-part motion with the second part being reflected at [ECF No. 85]. However, the Court's ruling on [ECF No. 82] encompasses and disposes of [ECF No. 85].

## I. Background

The alleged facts in this case have been summarized many times, so the Court assumes familiarity with the relevant allegations. Specific facts and procedural history are addressed below as necessary.

## II. Discussion

Kathryn raises six distinct issues in her motions: (1) service of process on Kathryn Dayan; (2) personal jurisdiction over Kathryn Dayan; (3) failure to state a claim upon which relief may be granted as to Plaintiff's third cause of action; (4) failure to join a necessary party, Dava Dayan; (5) transfer to the United States District Court for the Northern District of California; and (6) stay of the proceedings. Each issue is addressed below in turn.

### A. Service[3]

#### 1. Standard and Applicable Authority

Kathryn seeks to quash service or dismiss the claims against her pursuant to Fed. R. Civ. P. 12(b)(5). [ECF No. 82 at 13–14]; [ECF No. 89 at 5–13]. A court cannot exercise personal jurisdiction over a defendant that has not been

---

[3] It is somewhat unusual that Kathryn contests service of process, or at least that she appears to advocate for strict compliance with the service rules. Kathryn and Dava removed this action from the district court of Tulsa County, Oklahoma on the basis of diversity jurisdiction. [ECF No. 2]. However, some courts have held that service is a prerequisite for removal. *E.g., Bernstein v. State Farm Fire and Cas. Co.*, 711 F.Supp.3d 1282, 1286–87 (W.D. Okla. 2024). Although the Court does not decide whether this case could have been properly removed absent proper service, it is noted because removal is at least predicated on some kind of actual notice. See 28 U.S.C. § 1446(b) Because there is actual notice, that informs the analysis about whether substitute service was properly executed under California law.

properly served with the complaint and summons. *Harvey v. Filart*, No. 19-CV-00260-TCK-CDL, 2021 WL 4616088, at *2 (N.D. Okla. Oct. 6, 2021). Because service of process implicates personal jurisdiction, it is a "prerequisite to proceeding further in a case." *Id.* (citation and quotation marks omitted). "[P]laintiff bears the burden of proving that service was properly made." *Dungan v. Lehnus*, No. 20-CV-0393-CVE-JFJ, 2021 WL 1234522, at *2 (N.D. Okla. April 1, 2021) (citation omitted). Plaintiff must do so by making a "prima facie case that [s]he has satisfied statutory and due process requirements so as to permit the Court to exercise personal jurisdiction over defendants." *Id.* (quoting *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008)). Plaintiff may establish proper service of process by submitting "affidavits and other documentary evidence for the court's consideration, and plaintiff is entitled to the benefit of any factual doubt." *Harvey*, 2021 WL 4616088, at *2 (citation and quotation marks omitted).

The Court quashed Plaintiff's initial attempts to serve Kathryn. [ECF No. 76 at 14–20]. Kathryn alleges that Plaintiff then attempted to serve her by certified mail, but that this attempted service should be quashed as well. [ECF No. 82 at 13–14]. However, Plaintiff contends that the issue of service by certified mail is moot because Plaintiff later served Kathryn by substitute service under California law. [ECF No. 95 at 5–6]. Because Plaintiff does not rely on certified mail, only the substitute service issue is addressed.

3

Fed. R. Civ. P. 4(e)(1) allows service to be made "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Plaintiff asserts that substitute service was made in California, and that service was properly made pursuant to Cal. Civ. Proc. Code § 415.20. [ECF No. 95 at 6–15] In relevant part, the California rule provides:

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in Section 416.60, 416.70, 416.80, or 416.90, a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing.

*Id*. § 415.20(b).

Substitute service under California law "is to be liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant." *Cool Runnings Intern., Inc. v. Gonzalez*, No. 1:21-cv-00974-ADA-HBK, 2023 WL 2143382, at *6 (E.D. Cal. Feb. 21, 2023). Additionally, substantial compliance (rather than strict compliance) with the service rules

is generally sufficient if the defendant has actual notice of the lawsuit. *Id.* (citing *Team Enters., LLC v. Western Inv. Real Estate Trust*, No. 08-1050-LJO–SMS, 2008 WL 4367560 *2–3 (E.D. Cal. Sept. 23, 2008)); *see also Manalastas v. Joie de Vivre Kabuki, LLC*, No. 23-cv-03957-HSG, 2024 WL 390042, at *2 (N.D. Cal. Jan. 31, 2024) (citing *Gibble v. Car-Lene Research, Inc.*, 67 Cal. App. 4th 295, 313 (1998)). Because Kathryn removed this action upon notice, and because she acknowledges existence of this action in her declarations, it is clear enough that Kathryn has actual notice of this matter. Therefore, the service issue is liberally construed and analyzed under a substantial compliance framework.

## 2. Discussion

Substitute service under the California rules is only available if "a copy of the summons and complaint *cannot* with *reasonable diligence* be personally delivered to the person to be served." Cal. Code Civ. Proc. § 415.20(b) (emphasis added). The reasonable diligence requirement is usually satisfied with 2 or 3 attempts at a proper place for service. *Core v. Sarigianides et al.*, No. LA CV20-06128 JAK (AGRx), 2021 WL 3145984, at *3 (C.D. Cal. Mar. 2, 2021) (collecting cases). Giving Plaintiff the benefit of any factual doubt, Plaintiff has shown that at least 2 attempts were made to personally serve Kathryn. [ECF No. 95-4].

Because Plaintiff has sufficiently establish that she attempted to personally serve Kathryn with reasonable diligence, and based on the arguments made by the parties, that leaves these remaining questions: (1) was the summons and petition left at Kathryn's "dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age;" (2) was the person who was served "informed of the contents" of the documents provided by the person effecting service; and (3) did Plaintiff "mail[] a copy of the summons and of the [petition] by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and [petition] were left." Cal. Code Civ. Proc. § 415.20(b).

First, Kathryn argues that substitute service was not made on the appropriate person (*i.e.* a member of the household or a person who was apparently in charge). [ECF No. 89 at 9]; [ECF No. 101 at 4–8]. To be sure, some distinctions can be drawn between the cases cited by Plaintiff in response and the facts presented here. *See* [ECF No. 101 at 6–10]. However, Plaintiff has at least substantially complied with the requirement to leave the summons and complaint with an appropriate person.

6

Some courts have recognized that even household visitors are appropriate persons to effect substitute service on under Cal. Code Civ. Proc. § 415.20. For example, in *Susott v. Susott*, the court found that a mere "visitor who had permission to stay [at a house] for a few days" and who visited when he could was an appropriate person to accept service. Nos. C 12–581 SI & C 12–597 SI, 2012 WL 1213762, at *3 (N.D. Cal. Apr. 11, 2012). In part, the court explained that the visitor was "not only allowed to stay at [the defendant's] home, but was also given the authority to control access to it by others—for example, given the apparent authority to answer the door when the process server knocked" and that the visitor "was a competent person who could be considered either a 'member of the household or a person apparently in charge' of access to the house sufficient to accept service under" § 415.20. *Id*. In this case, the pet sitter who the process server attempted to serve admits that she opened Kathryn's door on at least one occasion, and that she encountered the process server on another occasion at Kathryn's garage door, which she must have also had access to. [ECF No. 89-9 at 1]. In other words, the pet sitter had access to Kathryn's home and apparent authority to answer the door. If an occasional visitor like the one in *Susott* is an appropriate person to effect substitute service on, so is Kathryn's pet sitter. Therefore, Plaintiff has substantially complied with the requirement to leave the summons and petition with an appropriate person.

Second, Kathryn contends that "the pet sitter was [not] 'informed of the contents' of the documents being served." [ECF No. 89 at 10]. Kathryn asserts this requirement is "critical because if [the person who is 'apparently in charge'] did not know or understand the significance of the documents that [the process server] handed [her], the documents may have ended up in a junk pile or recycling bin, rather than in [the defendant's] hands." [ECF No. 101 at 10] (quoting *Bouyer v. 603 San Fernando Rd., LLC*, No. CV-20-3853-MWF (PVCx), 2020 WL 7711840, at *2 (C.D. Cal. Nov. 2, 2020)).

The process server's affidavit does not contain a statement about whether the pet sitter was told what the contents of the documents were, *see* [ECF No. 83], and Kathryn states in one of her declarations that the pet sitter did not provide her a copy of the summons and petition. *See* [ECF No. 102-2 at 1]. However, the pet sitter admits that the process server "identified himself and showed [her] his badge," asked if Kathryn was home, and that he later said "you've been served." [ECF No. 101-6 at 1]. And although Kathryn says her pet sitter did not give her a copy of the summons and complaint, she does critically admit that the pet sitter called her about her interaction. [ECF No. 89-8 at 2]. Kathryn also admits that she "assume[d]" the documents left with the pet sitter were the summons and petition. [*Id.*].

Based on these facts, it is clear enough that Kathryn received the message about what the documents left with the pet sitter were. To be sure, the

process server could have followed and documented the requirements set forth in Cal. Civ. Proc. Code § 415.20(b) more diligently. But by identifying himself to Kathryn's pet sitter, showing his badge, inquiring about Kathryn's whereabouts, and stating "you've been served," the significance of the documents was adequately conveyed. Indeed, the message was apparently conveyed well enough that Kathryn correctly assumed the documents were the summons and petition. Plaintiff has substantially complied with the requirement to inform the pet sitter of the contents of the documents served on her.

Third, the process server's affidavit reflects that the summons and petition were mailed by first class mail with postage prepaid to the place where it was left with the pet sitter on November 14, 2024. [ECF No. 83 at 4]. Therefore, Plaintiff has complied with the final requirement for substitute service.

Because Plaintiff has sufficiently shown that substitute service was adequately effected on Kathryn, the motions to quash or dismiss for failure to serve process are denied.

## B. Personal Jurisdiction

Kathryn makes arguments about personal jurisdiction that are nearly identical to those she previously made. *Compare* [ECF No. 38 at 15–22] *with* [ECF No. 82 at 14–19]. The Court has already ruled on this issue and determined that personal jurisdiction over Kathryn in this district is proper.

9

[ECF No. 76 at 9–12]. Kathryn's motion to dismiss for lack of personal jurisdiction is denied for the same reasons set forth in the Court's previous order.

This is an opportune time to remind the parties about the requirements set forth in Fed. R. Civ. P. 1 and the Court's Chambers Rules. In relevant part, Fed. R. Civ. P. 1 requires that the federal rules "be construed, administered, and employed by the … parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Additionally, Civil Chambers Rule 1 requires the party filing a motion to "make a meaningful effort to confer with all opposing parties and/or counsel about the planned motion in an effort to resolve or minimize the issues presented to the Court."

This case was filed more than 2 years ago, and the motions currently at issue involve more than 500 pages of briefing and exhibits. Remarkably, though, service on Kathryn has just now been established. Because this case is still in its relatively early stages after all that time and effort, the Court strongly encourages counsel and the parties to refamiliarize themselves with the requirements of Fed. R. Civ. P. 1 and Civil Chambers Rule 1. All counsel are especially encouraged to keep the goals of just, speedy, and inexpensive litigation at the forefront of their minds going forward. Failure to comply with these and other applicable rules may result in adverse consequences

such as the striking of filings, summary denial of motions, and other appropriate consequences up to dismissal or default judgment without further notice.

### C. Failure to State a Claim

Plaintiff's third cause of action is for civil conspiracy against Kathryn. [ECF No. 2-2 at 11–12]. [4] Kathryn moves to dismiss the claim under Fed. R. Civ. P. 12(b)(6) because Plaintiff's claims are mere conclusory allegations that do not state a plausible claim of relief for civil conspiracy. [ECF No. 82 at 27–29]. Plaintiff responds that she has alleged sufficient facts about Kathryn's conduct and the conduct of her co-conspirators, Michael Dayan (the decedent's brother), Ellen Harless (who is affiliated with Merrill Lynch Pierce Fenner & Smith, Inc. ("Merrill Lynch") and Stifel, Nicolaus & Co., Inc. ("Stifel")), and Dava Dayan (the daughter of one of the decedent's ex-wives). [5] [ECF No. 97 at 28–30]. Plaintiff relies on the following allegations to support her claim for civil conspiracy against Kathryn. *See* [ECF No. 97 at 29–30]:

- ¶ 24: "Following John's death, Kathryn and Michael conspired to and did participate in the commission of fraud and embezzlement to

---

[4] Kathryn also states in her motion that she seeks to dismiss count 9. [ECF No. 82 at 27]. This appears to be an error because the heading for this section of Kathryn's brief focuses only on count 3, she later seeks only to dismiss count 3 [ECF No. 82 at 29], and Dava was previously dismissed [ECF No. 76]. Therefore, the Court will only address Kathryn's request to dismiss count 3.

[5] The Court does not make any determination about the legal relationship between Dava and the decedent.

wrongfully divide John's Estate to the exclusion of his elderly mother and sole heir at law;"

- ¶ 25: "On or about January 11, 2021, Kathryn filled out, signed and dated a State of Oklahoma Death Certificate Information Form, which was provided to Butler-Stumpff & Dyer funeral home, crematory, cemetery, in which she listed herself as John's spouse despite the two having been divorced since 2019. On July 2, 2021, in proceedings in the Oklahoma Probate, Kathryn testified under oath that she filled out said Death Certificate Information Form;"

- ¶ 26: "Kathryn sent the Oklahoma Death Certificate Information Form to the Butler-Stumpff & Dyer funeral home on or about January 12, 2021;"

- ¶ 27: "As a result, the Certified Death Certificate, issued by the State of Oklahoma, listed the 'Informant's Name' as Kelly Dayan, her 'Relationship to Decedent' as 'Wife' and herself, 'Kathryn E. Brehm' as the 'Surviving Spouse;'"

- ¶ 48: "On February 8, 2021, at 1:44 p.m., Kathryn instructed Michael, a resident of Tulsa County, to send the certified death certificate copies to 'Merrill Lynch Attn: Will Bertron, 3700 Buffalo Speedway, Houston, TXX 77098;'"

- ¶ 49: "Between March 19, 2021, and March 29, 2021, Merrill Lynch executed the relative rollover and transferred certain monies into Kathryn's name, exclusively;"

- ¶ 50: "At some point in time in or around March of 2021, Kathryn rolled the IRA over into the custody and control of Stifel, presumably to be managed by Ms. Ellen Harless;"

- ¶ 54: "Ellen Harless is an investment advisor employed at Stifel as of January 2021. Prior to her employment at Stifel, Ellen Harless was employed at Merrill Lynch, in Houston Texas, from approximately October 2001 — January 2021;"

- ¶ 55: "Upon information and belief, Ellen Harless managed the assets for both John and Kathryn up until her departure from Merrill Lynch;"

- ¶ 56: "Upon information and belief, Ellen Harless and Kathryn shared a close relationship insofar as she is apparently willing to testify on behalf of Kathryn;"

- ¶ 83: "During the course of the above-stated facts, Kathryn conspired with Michael Dayan for the purposes of causing injury to the Plaintiff and fraud against Plaintiff's property;"

- ¶ 84: "During the course of the above-stated facts, Kathryn conspired with an agent of Merrill Lynch and Stifel to consummate illegal activities and defraud the Plaintiff;"

- ¶ 85: "During the course of the above-stated facts, Kathryn conspired with Dava Dayan to consummate illegal activities and defraud the Plaintiff;"

[ECF No. 2-2 at 4, 7–8, & 11]. The Court's analysis will focus on these allegations because Plaintiff specifically relies upon them.

Kathryn contends that the allegations in ¶ 24 of the petition are conclusory, and that the allegations in ¶¶ 25, 26, 48–50, & 54–56 "do not show a meeting of the minds among Kathryn, Michael, Merrill Lynch, and Stifel" to pursue an unlawful purpose or unlawful means. [ECF No. 102 at 10]. Kathryn also urges the Court to ignore any exhibits outside of the pleadings that Plaintiff relies upon to support the allegation about Kathryn's conspiracy with Dava. [*Id*. at 11]. Finally, Kathryn relies on a previous ruling from Judge Gregory Frizzell in support of her argument that there are not sufficient allegations in the petition about Kathryn's conspiracy with Ellen Harless. [*Id*.] (citing [ECF No. 31]).

13

### 1.  Standard and Applicable Authority

A defendant may move to dismiss under Fed. R. Civ. P. 12(b)(6) based on a plaintiff's failure to state a claim upon which relief can be granted. To survive such a motion, "a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "There is a low bar for surviving a Rule 12(b)(6) motion to dismiss," and a case "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Griffith v. El Paso Cnty., Colo.*, 129 F.4th 790, 814–15 (10th Cir. 2025) (cleaned up).

The facts alleged in the operative pleading are accepted as true and viewed in the light most favorable to the non-moving party. *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "In other words, dismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice*, 861 F.3d at 1104–05.

Additionally, conclusory allegations need not be accepted. *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154–55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are

14

insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Under Oklahoma law, "[a] civil conspiracy consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means." *Brock v. Thompson*, 1997 OK 127, ¶ 39, 948 P.2d 279, 294 (Okla. 1997). "[C]ivil conspiracy itself does not create liability. To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means." *Id.*, 1997 OK 127 at ¶ 39, 948 P.2d at 294. Thus, "[a] conspiracy between two or more persons to injure another is not enough; an underlying unlawful act is necessary to prevail on a civil conspiracy claim." *Roberson v. PaineWebber, Inc.*, 2000 OK CIV APP 17, ¶ 21, 998 P.2d 193, 201 (Okla. Civ. App. 1999).[6] "There can be no civil conspiracy where the act complained of and the means employed are lawful." *Brock*, 1997 OK 127 at ¶ 39, 948 P.2d at 294 (emphasis in original). Accordingly, "[u]nder Oklahoma law, to state a claim for civil conspiracy, a plaintiff must plead the following elements: 1) a combination of two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful overt acts; and 5) damages as a proximate result thereof." *Okla. Land Holdings, LLC v. BMR II, LLC*, No. CIV-17-1036-

---

[6] Although not precedential, orders of the Oklahoma Court of Civil Appeals are cited for their persuasive value. Okla. Sup. Ct. R. 1.200(d)(2).

D, 2020 WL 4284806, at *13 (W.D. Okla. July 27, 2020) (citing *Gaylord*

*Entertainment Co. v. Thompson*, 1998 OK 30, 958 P.2d 128, 148 (Okla.

1998)). Plaintiff must allege facts that, if assumed true, support each

essential element to survive a motion to dismiss under Fed. R. Civ. P.

12(b)(6).

### 2. Discussion

Plaintiff's claim for civil conspiracy against Kathryn suffers the same flaw

that her claim for civil conspiracy against Stifel did; there are not sufficient

allegations in the petition about a meeting of the minds. *See generally* [ECF

No. 31 at 6–8]. Plaintiff alleges that Kathryn had three co-conspirators:

Michael Dayan, an agent of Merrill Lynch and Stifel, and Dava Dayan. [ECF

No. 2-2 at 18, ¶¶ 83–85]. The Court will address the allegations as to each in

turn.

<u>Michael Dayan:</u>

Plaintiff's allegations about Michael are mostly conclusory, but Plaintiff

does allege that Kathryn instructed Michael to mail the decedent's death

certificate to Merrill Lynch. However, those allegations do not include any

specifics about Michael's agreement or a meeting of the minds about an

unlawful activity or means. Plaintiff also appears to allege in her response

brief that Micheal directed the rollover of the decedent's IRA account to the

Stifel account. But those facts are not contained in the paragraphs of the

petition that Plaintiff relies on to support her civil conspiracy claim. *Compare* [ECF No. 97 at 30] *with* [ECF No. 2-2 at 4, 7–8, & 11].

<u>Agent of Merrill Lynch and Stifel (Ellen Harless):</u>

Like her allegations about Michael, Plaintiff's allegations about an agent of Merrill Lynch and Stifel (*i.e.* Ellen Harless) are mostly conclusory in nature. Plaintiff specifically alleges that Ellen Harless "instituted the rollover" of the decedent's IRA account to Stifel under "Kathryn and Michael's direction." [ECF No. 97 at 30]. But as Judge Frizzell already explained, although Plaintiff "alleges that Ms. Harless and Kathryn 'shared a close relationship,' the [petition] includes no factual allegations from which the court can infer that a meeting of the minds existed to utilize the allegedly falsified death certificate to obtain the Merrill Lynch accounts. Nor are there any allegations from which the court may reasonably infer an agreement regarding any alleged fraud as to the beneficiary designation." [ECF No. 31 at 7].

<u>Dava Dayan:</u>

Plaintiff argues it "is evident [that Kathryn conspired with Dava] in Ex. 7 whereby Dava communicates with Michael in furtherance of taking assets out of the State of Oklahoma and for the utilization of the same of her own personal benefit." [ECF No. 97 at 30]. Exhibit 7 to Plaintiff's response brief is a deposition notice that is irrelevant to the issue of whether Plaintiff has

sufficiently pled civil conspiracy against Kathryn. [ECF No. 97-7]. There is no exhibit 7 attached to Plaintiff's petition. Given the lack of clarity on what exhibit Plaintiff is referring to and Plaintiff's failure to develop this argument, Plaintiff has not shown that she sufficiently pled civil conspiracy against Kathryn with respect to Dava. Further, it is not appropriate to consider these communications because the exhibit was not referred to or incorporated by reference into the petition, nor are they documents that the Court may judicially notice. *Shoemaker Corp. III, Inc. v. Garrett*, 704 F.Supp.3d 1222, 1234 n.1 (N.D. Okla. 2023) (quoting *Gee v. Pacheo*, 627 F.3d 1178, 1186 (10th Cir. 2010)).

For the reasons explained above, Plaintiff has failed to adequately plead a meeting of the minds. Therefore, Plaintiff's third cause of action against Kathryn is dismissed without prejudice. However, Plaintiff is granted leave to amend her Petition. If Plaintiff wishes to amend her petition, she must do so no later than <u>21 days</u> after the date this order is entered.

### D. Failure to Join a Necessary Party

Kathryn argues that Dava is a necessary party who cannot be feasibly joined. [ECF No. 82 at 19–21]. Specifically, Kathryn highlights Plaintiff's allegation that "Dava is in possession of some, if not all of the funds wrongfully taken from the Plaintiff that in law, equity and good conscience, she is not entitled to retain" and Plaintiff's request to impose a constructive

18

trust "over the funds in the possession of the persons and entities above-named." [*Id*. at 20].[7] Kathryn contends that because some of the funds Plaintiff seeks to impose a constructive trust over are in Dava's possession, she is a necessary party. [*Id*.]; *see also* [ECF No. 102 at 3–5]. In response, Plaintiff contends that Dava is not a necessary party just because she is a co-conspirator who is jointly and severally liable. [ECF No. 97 at 19–21].

### 1.  Standard and Applicable Authority

Federal Rule of Civil Procedure 12(b)(7) allows for dismissal of an action for "failure to join a party under Rule 19." The Tenth Circuit has recognized that "Rule 19 provides a three-step process for determining whether an action should be dismissed for failure to join a purportedly indispensable party." *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001). The moving party bears the burden. *See Davis v. United States*, 192 F.3d 951, 958 (10th Cir. 1999).

---

[7] Kathryn also argues in her reply brief that the existence of related probate proceedings "is inherently bound up in the issue of whether Dava is John's heir, and any potential interests she has in John's estate are necessarily implicated by this action. Under these circumstances, and for the reasons set forth in the Second Motion to Dismiss, the action should be dismissed for inability to join a necessary party." [ECF No. 102 at 5]. Kathryn raised this argument for the first time in her reply brief. Therefore, Kathryn waived this argument. *Pamela D.T. v. O'Malley*, No. 4:23-cv-62-CDL, 2024 WL 1381779, at *6 (N.D. Okla. Mar. 31, 2024) (citations and quotations omitted)

First, "the court must find that a prospective party is 'required to be joined' under Rule 19(a)." *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1278 (10th Cir. 2012). Rule 19(a) states:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

Second, if the absent person or entity was required to be joined, "the court must then determine whether joinder is 'feasible.'" *Norton*, 248 F.3d at 997. "If joinder is feasible, the court must order it; the court has no discretion at this point because of the mandatory language of the rule." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1611 (3d ed. June 2024 update) (internal footnote omitted).

Third and finally, if the required person or entity cannot be feasibly joined, "the court must determine, under Rule 19(b), whether the required-

but-not-feasibly-joined party is so important to the action that the action cannot 'in equity and good conscience' proceed in that person's absence."

*Harnsberger*, 697 F.3d at 1278-79. The factors to consider include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). If the action cannot "in equity and good conscience" proceed without the absent person or entity, the action "should be dismissed." *Id.* "Because Rule 19(b) does not state the weight to be given each factor, the district court in its discretion must determine the importance of each in the context of the particular case." *Thunder Basin Coal Co. v. Sw. Pub. Serv. Co.*, 104 F.3d 1205, 1211 (10th Cir. 1997).

### 2. Discussion

Plaintiff appears to misread Kathryn's argument on this point. Kathryn does not contend that Dava is a necessary party because she is Kathryn's co-conspirator. Rather, she says that Dava is a necessary party because the

scope of the constructive trust that Plaintiff seeks would include property in Dava's possession.

In support of her motion, Kathryn primarily relies on two decisions in the case of *Allen ex rel. Allen v. Devine*, No. 09–cv–668 (ADS) (E.D.N.Y.). In that case, the plaintiff sought a constructive trust over money invested in certain companies and individuals and "an injunction preventing the dissipation of any funds obtained from [plaintiff] and the sale or other transfer of any assets obtained in whole or in part with any funds obtained from [plaintiff]." *Allen ex rel. Allen v. Devine*, 670 F.Supp.2d 164, 169 (E.D.N.Y. 2009) ("*Allen I*"). The court found that a constructive trust would "necessarily implicate the rights of" persons who made the investments over which a constructive trust was sought. Therefore, the court determined that those investors were necessary parties. *Id.*; *see also Allen ex rel. Allen v. Devine*, 726 F.Supp.2d 240, 257 (E.D.N.Y. 2010) ("*Allen II*") (noting that the necessary parties were those who "allegedly [held] at least some of the assets that would be placed under trust.").

With respect to the first step of the inquiry (i.e. whether Dava is a necessary party), the allegations in Plaintiff's petition about the scope of the constructive trust are less clear than the issues presented in *Allen I* and *Allen II*. Plaintiff alleges that "Dava is in possession of some, if not all of the funds wrongfully taken from the Plaintiff that in law, equity and good

22

conscience, she is not entitled to retain." [ECF No. 2-2 at 16]. Only 2 of the 20 causes of action alleged in the petition are for constructive trust; count 6 is against Kathryn, and count 20 is against Stifel.[8] In relevant part, counts 6 and 20 and Plaintiff's prayer for relief allege as follows:

Cause of Action 6 [ECF No. 2-2 at 13] (emphasis added):

> 105. Plaintiff is entitled to a constructive trust over any and all property, funds or proceeds **in the possession or control of Kathryn Dayan** to the extent that any such property, funds or proceeds originate from, result from or are attributable to any asset or property owned by Plaintiff or to which Plaintiff has had an interest in; and

> 106. Plaintiff is entitled to an Order from this Court imposing a constructive trust on any property, funds or proceeds that originate from, result from, or are attributable to any funds obtained from any financial institution named herein.

Cause of action 20 [ECF No. 2-2 at 21] (emphasis added):

> 178. Plaintiff is entitled to a constructive trust over any and all property, funds or proceeds **in the possession or control of Stifel** to the extent that any such property, funds or proceeds originate from, result from or are attributable to any asset or property owned by Plaintiff or to which Plaintiff has had an interest in; and

> 179. Plaintiff is entitled to an Order from this Court imposing a constructive trust on any property, funds or proceeds that originate from, result from, or are attributable to any funds obtained from any financial institution named herein.

---

[8] Although Plaintiff styles causes of action 6 and 20 in the petition as standalone claims, there is no cause of action for constructive trust. "It is a well-settled rule that "[a] constructive trust is a remedial device used by courts to enforce substantive rights ... it is not itself a substantive right."" *Growtech Indus., LLC v. Mary Mechanix, L.L.P.*, No. 5:21-CV-841-D, 2022 WL 4473622, at *8 (W.D. Okla. Sept. 26, 2022) (quoting *Howell Petroleum Corp. v. Samson Res. Co.*, 903 F.2d 778, 780 (10th Cir. 1990) (applying Oklahoma law)).

Prayer for Relief [ECF No. 2-2 at 21] (emphasis in original and added):

> **WHEREFORE**, Plaintiff prays for relief **consistent with that requested hereinabove**, that this Court immediately enter a constructive trust over the funds **in the possession of the persons and entities above-named**; for its attorney fees and costs, and for any such and further relief to which it may be entitled to.

Kathryn is correct insofar as Plaintiff alleges that "Dava is in possession of some, if not all the funds wrongfully taken from the Plaintiff." [ECF No. 2-2 at 16]. But that does not necessarily mean the constructive trust Plaintiff seeks would include property that Dava possesses or has an interest in. The above-quoted portions of counts 6 and 20 and the prayer for relief indicate that the constructive trust would cover property held by Kathryn and Stifel, not Dava.

Certainly, the prayer for relief asks for a constructive trust over "funds in the possession of the persons and entities above-named" [ECF No. 2-2 at 21], and count 20 refers to "funds obtained from any financial institution named herein." Read out of context, that could potentially include funds held by Dava. But Dava is no longer a party, and counts 6 and 20 are limited to funds in Kathryn and Stifel's possession. Because the constructive trust that Plaintiff seeks does not necessarily implicate property in Dava's possession, she is not a party who is required to be joined under Fed. R. Civ. P. 19(a).

Because Kathryn has not satisfied the first step of the inquiry, the Court does not substantively analyze steps two or three. But even assuming Dava

was a necessary party under Rule 19, it is not clear that dismissal of the entire action would be the appropriate remedy—even under the *Allen* cases Kathryn relies upon. *See Allen II*, 726 F. Supp. 2d at 257 (dismissing only the constructive trust claim and denying the remaining requested equitable relief under Rule 19(b)). Kathryn's motion to dismiss for failure to join a necessary party is denied.

## E. Transfer

Kathryn requests to transfer this case to the United States District Court for the Northern District of California. [ECF No. 82 at 21–26]. Kathryn highlights several factors in support of transfer: Plaintiff's lack of Oklahoma citizenship; this case was filed by Plaintiff after the California probate proceedings were initiated; Plaintiff has voluntarily filed a probate petition in California; and the funds at issue are not in Oklahoma. [*Id.* at 23]. Kathryn also points witness and evidence availability as a reason for transfer. [*Id.* at 23–24]. Finally, Kathryn asserts that a California court would be better situated to handle underlying state court issues, and that transfer is appropriate given the increase in criminal caseloads in Northern District of Oklahoma following the Supreme Court's decision in *McGirt v. Oklahoma*, 591 U.S. 894 (2020). [*Id.* at 24–26].

Plaintiff argues that her choice of forum in this district should be respected because of the strong factual connection in this district, and this

district is closer to her than the Northern District of California. [ECF No. 97 at 22]. Plaintiff also contends that Kathryn has "not shown that any of the witnesses would be unwilling to come to trial in Oklahoma," that much of the relevant evidence is already in her possession, and the testimony of the California witnesses could be received "via video teleconference or deposition." [*Id*. at 23]. She also argues that the Merrill Lynch evidence is "purely electronic information and … can be obtained from any of its offices across the U.S." [*Id*.]. Additionally, Plaintiff asserts that "Oklahoma and its law as the domiciliary probate controls the succession and passing of personal property of the decedent." [*Id*. at 23–24]. Finally, Plaintiff asserts that she would be prejudiced by having to obtain new counsel in California, that the Northern District of California also has a large docket, and that any substantive issues of California law in this case are relatively simple. [*Id*. at 23].

In reply, Kathryn highlights a few points. Kathryn contends that Plaintiff admits her choice of forum is not entitled to deference, and that she did not adequately explain what the factual connection to this district is. [ECF No. 102 at 5]. Kathryn disputes that the witness convenience issue tips in Plaintiff's favor in light of modern technology and because Dava and Kathryn live in California, not Oklahoma. [*Id*.]. Kathryn also argues that two of the witnesses, she and Dava, are not willing to come to trial in Oklahoma

because both individuals contested personal jurisdiction. [ECF No. 102 at 5–6]. Finally, Kathryn points out that Plaintiff is already litigating matters in the California probate proceedings, and that Plaintiff's cited evidence about the location of the Merrill Lynch funds is not actually evidence about where the funds were located. [*Id.* at 6–7].

## 1. Standard and Applicable Authority

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The party seeking transfer "bears the burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). A plaintiff's choice of forum is usually afforded deference, but that deference is given less weight if the plaintiff does not reside in the judicial district or if the "facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010) (citation and quotation mark omitted). Additionally, "[m]erely shifting the inconvenience from one side to the other ... obviously is not a permissible justification for a change of venue." *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992).

Under 28 U.S.C. § 1404(a), a district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Chrysler Credit Corp.*, 928 F.2d at 1516 (quotation omitted). The district court should consider a range of factors, including (1) "the plaintiff's choice of forum;" (2) "the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses;" (3) "the cost of making the necessary proof;" (4) "questions as to the enforceability of a judgment if one is obtained;" (5) "relative advantages and obstacles to a fair trial;" (6) "difficulties that may arise from congested dockets;" (7) "the possibility of the existence of questions arising in the area of conflict of laws;" (8) "the advantage of having a local court determine questions of local law;" and (9) "all other considerations of a practical nature that make a trial easy, expeditious and economical." *Id.* (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)) (quotation marks omitted).

## 2. Discussion

As for the first factor, the ordinary deference to Plaintiff's choice of forum is not applicable because Oklahoma is not where she resides. *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168. However, the facts that support Plaintiff's claims are materially related and connected to Oklahoma because of Kathryn's alleged conduct directed toward Oklahoma. *See id.; see generally* [ECF No. 76

at 9–12] (discussing Kathryn's contacts with Oklahoma in the context of personal jurisdiction). This factor weighs against transfer.

As for the second factor, transfer would provide greater access to Kathryn and Dava as witnesses because California is their home state. However, as detailed more thoroughly in the Court's previous order finding personal jurisdiction over Kathryn, [ECF No. 76 at 9–12], Kathryn directed her conduct toward Oklahoma. Therefore, any inconvenience suffered by her is of her own doing. It is also not clear that witnesses and other evidence is less accessible in Oklahoma than it is in California. Under this factor, transfer would just allow easier access to Kathryn and Dava, and it would have no appreciable impact on availability and access to other witness and evidence. Therefore, the effect of transfer would be to shift the inconvenience from Kathryn to Plaintiff, and that is not a proper basis for transfer. This factor weighs against transfer.

The parties do not thoroughly address the third, fourth, or fifth[9] factors, so those factors do not impact the analysis. As for the sixth factor, both the Northern District of California and the Northern District of Oklahoma appear to have heavy caseloads, so this factor does not impact the analysis.

---

[9] Plaintiff purports to address this factor, but the substance of Plaintiff's arguments are about witness and evidence availability. *See* [ECF No. 97 at 24].

As for the seventh and eighth factors, the Court appreciates that California probate law may have an impact on this case, so this factor weighs in favor of transfer. However, the issues presented do not appear so novel, complex, or critical to California's interests that transfer is warranted based on this factor alone.

Finally, the ninth factor weighs heavily against transfer. As noted above, the motions now at issue involve more than 500 pages of briefing and exhibits, and service as to Kathryn has just now been established after more than 2 years of litigation. The Court has also spent a significant amount of time becoming familiar with this case. Given the lengthy procedural history and the time already spent on this case by the Court, transfer would be extremely inefficient because a new judge would essentially have to start from square one to become familiar with this case.

Considering all these factors together, they weigh against transfer. Therefore, Kathryn's motion to transfer this case to the United States District Court for the Northern District of California is denied.

**F. Stay**

Kathryn also asks the Court to stay this case while certain probate proceedings are pending in Napa County, California. [ECF No. 82 at 26–27]. In seeking a stay, Kathryn primarily relies on Dava's unresolved petition to determine status, which would purportedly affect Plaintiff's status as the

30

administrator of the decedent's estate. [*Id.* at 26–27]. Kathryn argues that if Dava prevails in the California proceedings, she would "replace [Plaintiff] as [the decedent's] sole heir at law" and "would be the only person entitled to make a claim for" the assets at issue in this case. [*Id.* at 27].

In response, Plaintiff says she anticipates an outcome in her favor in the California litigation, and she highlights the possibility of further litigation and appeals. [ECF No. 97 at 27]. Plaintiff further argues that "the present action would not be moot, because the various [claims against Kathryn] would still be pending" and the question of whether Dava will prevail is "entirely speculative." [*Id.*]. Plaintiff also claims that "an unlimited stay of proceedings would prejudice the Plaintiff, delay the proceedings and not serve judicial economy." [*Id.* at 27–28].

In reply, Kathryn reiterates that if Dava's petition is successful, Plaintiff's claims in this case would necessarily belong to Dava, not Plaintiff. [ECF No. 102 at 7]. Kathryn also points to (and appears to incorporate by reference) a brief filed in the California proceedings in support of her position that Dava is likely to prevail on the equitable adoption issue. [*Id.* at 7–8]. Kathryn also asserts that the cause of any delay is due to Plaintiff's "gamesmanship." [*Id.* at 8].

### 1.  Standard and Applicable Authority

District courts have inherent power to manage their dockets, and "the power to stay proceedings is incidental to" that power. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The party requesting a stay carries the burden of establishing it is needed. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). The decision to stay a case falls with the court's discretion, but factors to consider include: "[1] whether the [party requesting a stay is] likely to prevail in the related proceeding; [2] whether, absent a stay, [they] will suffer irreparable harm; [3] whether the issuance of a stay will cause substantial harm to the other parties to the proceeding; and [4] the public interests at stake." *United Steelworkers of America v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003); *see also Nken v. Holder*, 556 U.S. 418, 426 (2009) (listing substantially the same factors for the "traditional" standard for stays).

### 2.  Discussion

In Kathryn's motion, she primarily focuses on the perceived "enormous expenditure of time and resources by the Court and the parties that would essentially be wasted if Dava prevails" in the California probate proceedings. [ECF No. 82 at 27]. This does not squarely fit in any of the above-listed factors. Kathryn does, however, attempt to address the likelihood of Dava prevailing in the related proceeding in her reply brief, but she primarily does

so by directing the Court to a brief Dava filed in the California proceedings. [ECF No. 102 at 7] (citing [ECF No. 102-3]). Citing to a 17-page brief filed in another court is not a proper way to develop an argument for the Court's consideration. But even if Dava is likely to prevail in the California probate proceedings, Kathryn does not adequately address the irreparable harm she will suffer if this case is not stayed, whether any other party to this proceeding will suffer substantial harm, or the public interests at stake. Therefore, Kathryn's motion to stay is denied.

## III. Conclusion

For the reasons set forth above, Kathryn's motions filed at ECF Nos. 82 & 89 are granted in part and denied in part as follows:

1. Kathryn's motion to quash or dismiss for improper service of process is DENIED;

2. Kathryn's motion to dismiss for lack of personal jurisdiction is DENIED;

3. Kathryn's motion to dismiss for failure to state a claim upon which relief may be granted is GRANTED. Plaintiff's third cause of action in the petition is DISMISSED WITHOUT PREJUDICE. Plaintiff is granted leave to amend her petition. If Plaintiff wishes to amend her petition, she must do so within 21 days of the date of this order. Failure to timely amend the petition may result in dismissal;

4. Kathryn's motion to dismiss for failure to join a necessary party is DENIED;

5. Kathryn's motion to transfer this case to the United States District Court for the Northern District of California is DENIED;

6. Kathryn's motion to stay this case pending resolution of the California probate proceedings is DENIED.

DATED this 19th day of March, 2025.

_____

Sara E. Hill
UNITED STATES DISTRICT JUDGE